UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LONDON LEE SYKES, JR.,

       Plaintiff,                           Case Number 12-14874
v.                                                  Honorable David M. Lawson

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____/

## OPINION AND ORDER GRANTING PETITIONER'S
## MOTION FOR ATTORNEY'S FEES

       This matter is before the Court on the plaintiff's motion for approval of attorney fees under 42 U.S.C. § 406(b). Counsel seeks approval of a fee of $9,680.50. The attorney for the Commissioner, a special assistant United States attorney with the Social Security Administration's regional office in Chicago, filed a response opposing the motion, suggesting instead that a fee of $8,000 is reasonable, or maybe a compromise amount between those two boundaries might be agreed upon between Mr. Sykes and his attorney. The Court finds that the opposition to the motion, although perhaps in some way well intentioned, is not well reasoned or supported by current law, and lacks merit. The petitioner's fee request is reasonable and will be approved.

I.

       The plaintiff filed his claim for Social Security disability benefits on June 12, 2009, alleging a disability onset date of May 16, 2009. The claim initially was denied on November 16, 2009. The plaintiff filed a request for an administrative hearing on January 15, 2010, and a hearing was held on November 22, 2010. On February 25, 2011, the administrative law judge issued a written decision finding that the plaintiff was not disabled. It appears that the plaintiff proceeded on his initial application and at the administrative hearing *pro se*, but after the hearing he retained counsel

and filed a request for review of the decision by the Appeals Council on March 25, 2011. On August 31, 2012, the Appeals Council affirmed the decision of the ALJ.

Present counsel filed a complaint on behalf of the plaintiff seeking judicial review of the denial of benefits on November 1, 2012. Under the scheduling order entered by the Court, the plaintiff's motion for summary judgment was due on February 28, 2013, and the Commissioner's response or cross-motion was due on March 28, 2013. Instead of filing a response or cross-motion, counsel for the government filed three successive motions to extend the time for filing of the response, each time asserting that he was prevented from meeting the Court's schedule due to a high caseload and the priority of other, older matters, on which he also previously had asked for multiple extensions of time. The Court eventually extended the deadline for responsive action by the government to June 12, 2013, almost three months after the originally scheduled date.

The government ultimately never filed a substantive response to the complaint or the plaintiff's dispositive motion, but instead stipulated to remand the case to the Commissioner for further review. After remand, on September 8, 2014, the Commissioner found the plaintiff disabled and awarded him past-due benefits of $62,722.

On September 21, 2014, in accordance with 42 U.S.C. § 406(b) and the contingent fee agreement entered into by the plaintiff and his attorney, counsel for the plaintiff filed a petition for payment of the contingent fee of 25% of the past-due benefits recovered, as specified under the agreement, for a total of $15,680.50. Counsel asserted that $6,000 of the fee already had been paid by the Commissioner from funds withheld to cover the fee, and therefore requested that the Court approve payment of the remaining balance of $9,680.50.

The Commissioner filed an opposition to the petition for fees in which she asserts that, in her view, an award of $8,000 would be "more reasonable" than the $9,680.50 requested. She suggested that the fee requested would equate to an "implied hourly rate" of $620.54. (The petitioner attached his billing records showing that he spent 15.6 hours on the case, and he acknowledged that when he billed by the hour, his customary rate was $150.) That hourly rate would be roughly 4.1 times the petitioner's standard rate, which the Commissioner deems unreasonable. The Commissioner points out that plaintiff's counsel's brief in this Court was a mere seven pages long, and it used standard language, and "rework[ed]" much of the brief submitted to the Appeals Council. The Commissioner also believes that some of the time charged was for work that a paralegal could perform.

## II.

The Social Security Act allows a claimant's attorney to charge a contingent fee to his client, as long as the fee is "a reasonable fee for such representation" and does not exceed "25 percent of the total of the past-due benefits to which the claimant is entitled by reason of [the favorable] judgment." 42 U.S.C. § 406(b)(1)(A). The Supreme Court has explained that this provision imposes a legislatively determined absolute cap on the amount of a fee award, but it does not establish a presumption as to the reasonableness of a fee request within the statutory limit. Instead, the district court independently must review any fee application filed under section 406(b) to ensure that the fee requested is reasonable under the circumstances. *Gisbrecht v. Barnhart*, 535 U.S. 789, 807-08 (2002). Sometimes, according to the Supreme Court, a reduction of the fee below the 25 percent cap is appropriate.

> Courts that approach fee determinations by looking first to the contingent-fee agreement, then testing it for reasonableness, have appropriately reduced the

attorney's recovery based on the character of the representation and the results the representative achieved. If the attorney is responsible for delay, for example, a reduction is in order so that the attorney will not profit from the accumulation of benefits during the pendency of the case in court. If the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order. In this regard, the court may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases.

*Id.* at 808.

Although the Supreme Court endorsed the consideration of a hypothetical hourly rate as one factor in the reasonableness analysis, the Court explicitly rejected the "lodestar method" that the Ninth Circuit had employed. Under that method, the total fee would be limited to a "reasonable hourly rate" determined by the court, multiplied by the number of hours that plaintiff's counsel had accounted for in working on the case. As the Court noted, the "lodestar method" has "'become the guiding light of [its] fee-shifting jurisprudence,'" in the context of judicial review and approval of fee awards payable by the losing to the prevailing party in cases where, by statute, the plaintiff was allowed to recover fees from an opponent in litigation. *Gisbrecht*, 535 U.S. at 801 (quoting *Burlington v. Dague*, 505 U.S. 557, 562 (1992)). However, the Court explained that the review for reasonableness of contingent fee agreements is fundamentally different from the review of fees awarded to a prevailing party, due to the distinct economic premises for the two types of compensation:

Fees shifted to the losing party [] are not at issue here. Unlike 42 U.S.C. § 1988 and [the Equal Access to Justice Act], 42 U.S.C. § 406(b) does not authorize the prevailing party to recover fees from the losing party. Section 406(b) is of another genre: It authorizes fees payable from the successful party's recovery. Several statutes governing suits against the United States similarly provide that fees may be paid from the plaintiff's recovery. Characteristically in cases of the kind we confront, attorneys and clients enter into contingent-fee agreements specifying that

-4-

> the fee will be 25 percent of any past-due benefits to which the claimant becomes entitled.
>
> Contingent fees, though problematic, particularly when not exposed to court review, are common in the United States in many settings. Such fees, perhaps most visible in tort litigation, are also used in, e.g., patent litigation, real estate tax appeals, mergers and acquisitions, and public offerings. Traditionally and today, the marketplace for Social Security representation operates largely on a contingency fee basis.
>
> Before 1965, the Social Security Act imposed no limits on contingent-fee agreements drawn by counsel and signed by benefits claimants. In formulating the 1965 Social Security Act amendments that included § 406(b), Congress recognized that attorneys have upon occasion charged [] inordinately large fees for representing claimants in court. Arrangements yielding exorbitant fees, the Senate [] observed, reserved for the lawyer one-third to one-half of the accrued benefits. Congress was mindful, too, that the longer the litigation persisted, the greater the buildup of past-due benefits and, correspondingly, of legal fees awardable from those benefits if the claimant prevailed. Attending to these realities, Congress provided for "a reasonable fee, not in excess of 25 percent of accrued benefits," as part of the court's judgment, and further specified that "no other fee would be payable."
> . . .
> Congress thus sought to protect claimants against "inordinately large fees" and also to ensure that attorneys representing successful claimants would not risk "nonpayment of [appropriate] fees." But nothing in the text or history of § 406(b) reveals a design to prohibit or discourage attorneys and claimants from entering into contingent fee agreements. Given the prevalence of contingent-fee agreements between attorneys and Social Security claimants, it is unlikely that Congress, simply by prescribing "reasonable fees," meant to outlaw, rather than to contain, such agreements.

*Gisbrecht*, 535 U.S. at 802-05 (citations and quotations omitted).

Contingent fees are an important part of American litigation, because they play a role in facilitating access to the courts. But as all personal injury lawyers know well, the contingent fee approach to revenue-generating litigation is a risk-reward proposition. "Clients take inherent risks in contingent fee arrangements, and their attorneys do the same." *Ackerman v. Miotke*, No. 265004, 2006 WL 859471, at *5 (Mich. Ct. App. Apr. 4, 2006). That is why (as the Sixth Circuit has explained) judicial review of fees received under a contingent fee agreement must account for the

fact that, by their nature, such agreements inherently will overcompensate the attorney in some cases and undercompensate him in others.

> Although [the plaintiff's attorney] did not bill on an hourly basis, the district court computed his hourly rate by dividing the hours worked into the amount of the requested fee. The result was an hourly rate of $151.51. We tend to agree with the trial judge that, viewed as an hourly rate billing, this is on the high side; however, this is not an hourly rate billing. It is not at all unusual for contingent fees to translate into large hourly rates if the rate is computed as the trial judge has computed it here. In assessing the reasonableness of a contingent fee award, we cannot ignore the fact that the attorney will not prevail every time. The hourly rate in the next contingent fee case will be zero, unless benefits are awarded. Contingent fees generally overcompensate in some cases and undercompensate in others. It is the nature of the beast.

*Royzer v. Sec'y of Health & Human Servs.*, 900 F.2d 981, 982 (6th Cir. 1990). As to review of contingent fees under section 406(b), the court of appeals has instructed that reductions of such fees to ensure reasonableness "generally should fall into two categories: 1) those occasioned by improper conduct or ineffectiveness of counsel; and 2) situations in which counsel would otherwise enjoy a windfall because of either an inordinately large benefit award or from minimal effort expended." *Hayes v. Sec'y of Health & Human Servs.*, 923 F.2d 418, 420-21 (6th Cir. 1990). The *Hayes* court further suggested factors that the district court may consider when reviewing a contingent fee to determine if it would result in a "windfall" for the plaintiff's attorney:

> [A]rguments [against reasonableness of the fee] may include, without limitation, a consideration of what proportion of the hours worked constituted attorney time as opposed to clerical or paralegal time and the degree of difficulty of the case. Factors such as these should inform the district court's determination of whether the attorney would enjoy a windfall because of minimal effort expended.

*Hayes*, 923 F.2d at 422 (quotations and citations omitted). The *Hayes* court identified at least one rule of thumb when guarding against a windfall:

> [A] windfall can never occur when, in a case where a contingent fee contract exists, the hypothetical hourly rate determined by dividing the number of hours worked for

> the claimant into the amount of the fee permitted under the contract is less than twice the standard rate for such work in the relevant market. We believe that a multiplier of 2 is appropriate as a floor in light of indications that social security attorneys are successful in approximately 50% of the cases they file in the courts. Without a multiplier, a strict hourly rate limitation would insure that social security attorneys would not, averaged over many cases, be compensated adequately.

*Ibid.* The Sixth Circuit has noted that the decision in *Gisbrecht* "elided strict presumptions altogether" and requires the district courts to review all 406(b) fee requests for reasonability. *Lasley v. Comm'r of Soc. Sec.*, 771 F.3d 308, 309 (6th Cir. 2014). Nevertheless, numerous district courts in this circuit have continued to rely upon the *Hayes* "floor" of "twice the standard rate" as a relevant benchmark and one factor among others in the reasonability analysis.

The Sixth Circuit, however, never has endorsed any particular nominal figure or ideal multiplier for the "standard hourly rate" applicable to the litigation of civil actions under the Social Security Act. Courts in this circuit have variously adopted "standard rates" ranging from $165 per hour, *Lasley*, 771 F.3d at 310, to $500 per hour, *Drenning v. Comm'r of Soc. Sec.*, No. 12-13470, 2014 WL 4705113, at *4 (E.D. Mich. Sept. 21, 2014). And in cases where the hypothetical hourly rate has exceeded twice the "standard rate," courts in this circuit routinely have approved as reasonable contingent fee awards yielding nominal hourly rates exceeding $700 per hour. *Jodrey v. Comm'r of Soc. Sec.*, No. 12-725, 2015 WL 799770, at *4 (S.D. Ohio Feb. 25, 2015), *report and recommendation adopted*, 2015 WL 1285890 (S.D. Ohio Mar. 19, 2015) (affirming award that yielded a "hypothetical hourly rate of $700") (collecting cases approving of hypothetical hourly rates ranging from $539 to $709).

In *Drenning v. Comm'r of Soc. Sec.*, No. 12-13470, 2014 WL 4705113 (E.D. Mich. Sept. 21, 2014), the district court affirmed an award that resulted in a hypothetical hourly rate of $691, observing that it was less than twice the "standard rate" of $500 her hour, which was reported by

the State Bar of Michigan as the 95th percentile for hourly rates charged by public benefits attorneys working in the state in 2010. *Drenning*, 2014 WL 4705113, at *4 (citations omitted); *see also Castaneda v. Comm'r of Soc. Sec.*, No. 10-13724, 2013 WL 2285448, at *2 (E.D. Mich. May 23, 2013) (finding hypothetical rate of approximately $600 per hour to be reasonable); *Hamilton v. Comm'r of Soc. Sec.*, No. 09-11553, 2011 WL 10620498, at *6 (E.D. Mich. Aug. 15, 2011) ($625 per hour).

Here, the fee of $9,680.50 specified under the contingent fee agreement is reasonable compensation for plaintiff's counsel's work in this case. Counsel for the plaintiff stated that he has practiced law since 1982 and has worked regularly on Social Security cases since 2000. He achieved an excellent result for his client in this case when, upon remand, his client was awarded more than $62,000 in past-due benefits wrongly denied to him by the Commissioner. The work done by plaintiff's counsel was not minimal, and the amount of the resulting fee does not represent a "windfall" or an inordinately large payment for that work. And plaintiff London Sykes approved of the fee in writing both when he signed the contingent fee agreement initially on November 9, 2012, and in a letter specifically approving the resulting amount after the award of benefits was secured on October 23, 2014.

The Commissioner argues, with no apparent factual basis, that the $8,000 fee she proposes ought to be allowed by the Court, rather than the $9,680.50 specified under the contingent fee agreement, because the reduced fee is "more reasonable" than a somewhat higher amount. However, the arguments advanced by the Commissioner contradict the express direction of the Supreme Court and its holding in *Gisbrecht*. The Commissioner has not identified any authority for the novel proposition that a statutorily permissible fee ought to be reduced to an arbitrarily lower

figure simply because the lower amount would be "more reasonable." The test under *Gisbrecht* for approval of a contingent fee is simply whether (1) the contemplated fee is within the statutory limit; and (2) the fee resulting from the contingent fee agreement is "reasonable."

Moreover, the Commissioner's fixation on the hourly rate is contrary to the plain holding of *Gisbrecht*, in which the Supreme Court rejected the lodestar method of fee review in non-fee-shifting cases. The Commissioner proposes that a fee of $8,000 would be "more reasonable" because it represents a multiple of only 3.4 against plaintiff's counsel's stated usual hourly rate of $150, as compared to the requested fee, which would be more than four times counsel's usual hourly rate. That position misconstrues both the relevance of a hypothetical hourly rate to the reasonableness analysis and the concept of a "standard hourly rate." As the Sixth Circuit noted in *Royzer*, "*this is not an hourly rate billing.*" *Royzer*, 900 F.2d at 982 (emphasis added). The hypothetical hourly rate benchmark is, in the context of analyzing a contingent fee, a *marginal*, not a *central* guidepost. The purpose of calculating a hypothetical hourly rate is not to establish what would be a reasonable hourly fee for the work done, and then compute an award based upon that rate times the hours worked. Instead, the hypothetical hourly rate is simply an outer boundary or a "sanity check" that might give one indication that the fee agreement would result in a disturbingly large fee for only nominal effort expended by plaintiff's counsel. But, as courts have observed (and which by now should be obvious), it is inherent to the nature of contingent fee practice that fees in winning cases will *overcompensate* counsel for the work actually performed, because it is unavoidable that fees in losing cases will *undercompensate* counsel — by resulting in a fee of $0 for otherwise diligent and worthy practice. *Ibid.*

Because the hypothetical hourly rate yielded by the fee is not and cannot reasonably be referenced as a central, typical, or "average" indicator of reasonable compensation, it makes little sense to compare that measure to a benchmark or "standard rate" composed from average or typical hourly rates. Instead, a more suitable measure of the "standard rate" for the purposes of *Gisbrecht* review is the highest rate routinely accepted in the sort of practice at issue in the relevant market. *See Drenning*, 2014 WL 4705113, at *4. Counsel's stated hourly rate of $150 is particularly inapposite as a benchmark, where it is below the 25th percentile ($180) of reported usual hourly rates for attorneys in public benefits practice in the State of Michigan. *See* State Bar of Michigan, Economics of Law Practice in Michigan, at 11 (2014), http://www.michbar.org/pmrc/articles/0000152.pdf. The 95th percentile figure is, for the present purpose, a more appropriate indicator of an upper bound for the "standard rate" charged by attorneys in this state for the type of practice involved in this case. If an attorney's application for fees were found, in a particular case, to suggest an effective hourly rate higher than that charged by 95% of his colleagues, then such a figure might indicate cause for concern. Such is not the case here.

According to the most recently reported data from the State Bar of Michigan, the 95th percentile figure for hourly billing rates for public benefits lawyers in Michigan is $395 per hour. Economics of Law Practice, at 11. Considering that claimants typically prevail in about 50% of appeals from administrative decisions under the Social Security Act, *Hayes*, 923 F.2d at 422, a hypothetical hourly rate even as high as $790 would not indicate that counsel could be expected to receive overall compensation in the course of his contingent fee practice that fairly could be regarded as extraordinarily high, compared with his colleagues doing the same work on a hourly fee basis.

Recognizing this, and as noted earlier, the district courts of this circuit routinely have approved fee petitions involving hypothetical hourly rates exceeding $700. The hypothetical rate here is $620.54, which is 1.6 times the most appropriate and readily available measure of the "standard rate" (well below the *Hayes* "floor" of twice the "standard rate"). That figure does not suggest that the compensation requested by counsel would be inordinately large for the effort expended. The plaintiff's attorney reports that he worked 15.6 hours on the case relating to proceedings before this Court. That is not a large number of hours, but neither is it nominal or trivial. The recovery of more than $62,000 was substantial when compared to the work performed, but not outlandish.

There is no indication — or even insinuation — that counsel for the plaintiff was in any way ineffective or responsible for any delay here. Indeed, the Commissioner in her opposition commended the efficiency, brevity, and accuracy of counsel's legal arguments in the complaint and motion for summary judgment. The Commissioner's misguided attempts to cast the briefing by plaintiff's counsel as routine or duplicative of work done before the administrative court are particularly specious where the government's attorney felt compelled to request no less than three extensions of time for filing a response to the plaintiff's dispositive motion. In her opposition to the present motion, the Commissioner quibbles with such minutiae as line items for work that she contends "would be either recoverable at a paralegal rate or non-compensable as office overhead," and with plaintiff's counsel's apparent use of a 12-minute billing increment in his work logs. But she does not dispute the assertion of plaintiff's counsel that he works as a solo practitioner with no support staff, and she has identified no authority holding that the nominal billing increment used by counsel is relevant to a reasonability analysis. Moreover, this dickering over "office overhead" and

billing increments embodies exactly the sort of frivolous and impertinent "satellite litigation" that the Supreme Court deprecated in *Gisbrecht* and discouraged the federal courts from pursuing in the course of reviewing for reasonability fees sought under section 406(b). *See Gisbrecht*, 535 U.S. at 808.

Finally, counsel for the Commissioner takes an unusual tack in his brief's concluding remarks, where he suggests that, if he were representing the plaintiff in the negotiation of a "compromise" fee — taking care to observe that the government's attorney does not, of course, represent the plaintiff's interests, and cannot fairly purport to do so from his adversarial position in the litigation — then "he would suggest an agreed motion for fees somewhere between what the Commissioner is recommending and what Mr. Littman [plaintiff's counsel] seeks (for example, the midpoint figure of $8,840.25), recognizing that the court might or might not authorize the full amount requested." He then suggests that "[w]ith both arguments for awarding Mr. Littman's requested fee and for awarding a lower fee properly fleshed out, it may be possible for Mr. Littman and Mr. Sykes [plaintiff] to *agree in writing on a fee which they could jointly present to this Court for approval*." (Emphasis added.). This position, of course, disregards the obvious fact that plaintiff and his attorney *did* agree in writing on a fee when they signed the contingent fee agreement. Moreover, they jointly requested payment of that fee both when the motion was filed (with the plaintiff's consent, as it must have been), and when, in reply to the opposition, the plaintiff himself filed a letter reiterating his approval of the fee request. It is apparent from counsel's curious conclusion to his brief that, rather than simply stipulating to the payment of a statutorily allowable and reasonable fee, counsel for the Commissioner instead elected to oppose the motion simply for the sake of opposition. Or perhaps it was for the purpose of advancing an arbitrary, hypothetical,

and unsolicited "bargaining position" to secure payment of a slightly lower fee than plaintiff's counsel requested, unsubstantiated by any factual basis or authority to show that the fee originally requested was not reasonable.

The Court is required to review every fee request under section 406(b)(1)(A) to determine that the amount requested is "reasonable." And it is appropriate, of course, for the Commissioner to oppose patently unreasonable fee requests. But in doing so, counsel should be able to point to facts that support an unreasonableness claim and legal authority that supports his position. In light of the argument and the proposals advanced by the Commissioner's attorney in this case, and his persistent complaints that he was prevented by his heavy caseload from addressing a matter that he now contends was simple and routine — and in which he ultimately found the plaintiff's position so persuasive that he stipulated to remand the matter for further proceedings — counsel ought to reconsider whether concocting gratuitous oppositions to routine petitions for statutorily permissible and otherwise reasonable fees in cases such as this is a wise use of his time.

### III.

The attorney's fee of $9,680.50, representing 25% of the amount of past-due benefits awarded, was approved by the plaintiff in writing when he entered into the contingent fee agreement with his attorney, is permissible under 42 U.S.C. § 406(b), and represents reasonable compensation for the work done by counsel in this case.

Accordingly, it is **ORDERED** that the petitioner's motion for attorney's fees [dkt. #15] is **GRANTED**.

It is further **ORDERED** that the attorney fee request in the amount of $9,680.50 is **APPROVED** under 42 U.S.C. § 406(b).

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   November 12, 2015

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 12, 2015.

s/Susan Pinkowski  
SUSAN PINKOWSKI